**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ELIZABETH JONES**, on behalf of herself and on behalf of all other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>**OSCAR HEALTH, INC.**,<br><br>Defendant. | Case No. _____________<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Elizabeth Jones ("Plaintiff") individually and on behalf of all others similarly situated, brings this Class Action Complaint and alleges the following against Defendant Oscar Health, Inc. ("Defendant"), based upon personal knowledge with respect to Plaintiff and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## SUMMARY OF THE CASE

1. Plaintiff brings this class action against Defendant for its failure to implement adequate administrative procedures to protect Plaintiff's and Class Members' personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") from wrongful disclosure.

2. Defendant is a "leading healthcare technology company built around a full stack technology platform and a relentless focus on serving our members".[1] Defendant has around 2 million members as of December 31, 2025, $11.7 billion of total revenue in 2025, and operates in 20 states. [2]

---

[1] https://ir.hioscar.com/overview/ (last visited Apr. 13, 2026).
[2] *Id.*

3. Plaintiff and Class Members were required to provide Defendant with their Private Information in connection with the services Defendant provides.

4. On December 31, 2025, Defendant became aware that member identification cards and other enrollment information related to 2026 health insurance coverage were inadvertently mailed to old and potentially incorrect member addresses ("Data Incident").[3]

5. On or about April 1, 2026, Defendant began sending individualized notice letters ("Notice") to victims of the Data Incident, informing them that their Private Information had been wrongfully disclosed in the Data Incident.

6. The Private Information of Plaintiff and Class Members exposed in the Data Incident includes: names and health insurance information, including health insurance policy number and health insurance plan information.[4]

7. Upon information and belief, due to Defendant's negligence in its mailing and address verification procedures, Plaintiff's and Class Members' Private Information was disclosed to unauthorized third parties who may now misuse that information, causing harm to the personal and financial lives of thousands of individuals including Plaintiff.

8. Defendant knowingly obtained Plaintiff's and Class Members' sensitive Private Information and had a resulting duty to securely maintain that information in confidence. Plaintiff and Class Members would not have provided their Private Information to Defendant if they had known that Defendant would not ensure that it used adequate safeguards to prevent wrongful disclosure.

---

[3] *See* Defendant's Notice of Privacy Incident informing Plaintiff of the Data Incident, attached hereto as **Exhibit A**.

[4] *Id*.

9. By taking possession and control of Plaintiff's and Class Members' Private Information, Defendant assumed a duty to securely store and protect it.

10. Now, and for the foreseeable future, Plaintiff and the Class Members will have to deal with the risk of unauthorized parties possessing and potentially misusing their Private Information. Even those Class Members who have yet to experience misuse of their information have to spend time responding to the Data Incident and are at an increased risk of harm as a direct and proximate result of the Data Incident. Plaintiff and Class Members have incurred and will continue to incur damages in the form of, among other things, potential misuse of their Private Information, lost time and expenses mitigating harms, increased risk of harm, deprivation of the value of their Private Information, loss of privacy, and/or additional damages as described below.

11. In sum, Plaintiff and the Class face a heightened risk of misuse of their Private Information because Defendant failed to implement adequate sensitive data handling procedures, allowing a preventable Data Incident to occur.

12. Plaintiff seeks to remedy these harms individually and on behalf of all other similarly situated individuals whose Private Information was exposed in the Data Incident. Plaintiff seeks remedies including compensation for time spent responding to the Data Incident and other types of harm, free credit monitoring and identity theft insurance for a substantial period, and injunctive relief including substantial improvements to Defendant's data privacy policies and practices.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because (a) the aggregate amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (b) the action is a class action, (c) there are Class Members who

are diverse from Defendant, namely Plaintiff, and (d) there are more than 100 Class Members.

14. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and because Defendant resides in this District.

## PARTIES

16. Plaintiff is a citizen and resident of Valdosta, Georgia, where she intends to remain.

17. Defendant is a Delaware corporation with its principal place of business located at 75 Varick St., 5th Floor, New York, New York 10013.

## FACTUAL ALLEGATIONS

### A. Background on Defendant

18. Defendant is a "leading healthcare technology company built around a full stack technology platform and a relentless focus on serving our members".[5]

19. Due to the nature of the services it provides, Defendant acquires and electronically stores Private Information. Defendant was therefore required to ensure that Private Information was not disclosed or disseminated to unauthorized third parties without Plaintiff's and Class Members' express written consent. Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties, including in selecting its vendors, encrypting the information, and purging information once it was no longer needed.

20. Upon information and belief, Defendant made promises and representations to Plaintiff and Class Members, including through Defendant's Privacy Policy[6] ("Privacy Policy"),

---

[5] https://ir.hioscar.com/overview/ (last visited Apr. 13, 2026).
[6] https://www.hioscar.com/legal/privacy/ (last visited Apr. 13, 2026).

that Private Information collected from them, including that of Plaintiff and Class Members, would be kept safe and confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

**B. The Data Incident**

21. On December 31, 2025, Defendant became aware that member identification cards and other enrollment information related to 2026 health insurance coverage were inadvertently mailed to old and potentially incorrect member addresses.[7]

22. On or about April 1, 2026, Defendant began sending Notice to victims of the Data Incident, stating:[8]

> **What Happened?** On December 31, 2025, Oscar became aware that member identification cards and other enrollment information related to 2026 health insurance coverage were inadvertently mailed to old and potentially incorrect member addresses. Upon becoming aware of this information, we immediately took steps to correct the issue in order to prevent it from recurring in the future, and launched an internal investigation to determine the nature and scope of the event. We then began a diligent and comprehensive review process in order to identify the individuals whose information may have been impacted. We recently completed that comprehensive review of 2026 enrollment mailings, and are providing notice to you out of an abundance of caution given that your information was potentially sent to a prior address.
>
> **What Information Was Involved?** While the actual types of data impacted vary by individual, the investigation determined that the following types of information may be impacted: name and health insurance information, including health insurance policy number and health insurance plan information. Please note that we are not aware of any attempted or actual misuse of your information at this time.

---

[7] Ex. A.
[8] *Id.*

23. To be clear, there are numerous issues with Defendant's Data Incident, but the deficiencies in the Data Incident Notice exacerbate the circumstances for victims of the Data Incident: Defendant fails to state whether it was able to successfully correct the issue and take steps to prevent similar incidents from occurring in the future, leaving victims to fear whether the Private Information that Defendant continues to maintain is secure and Defendant failed to notify victims until around three months after the Data Incident occurred, depriving victims of the earliest opportunity to take preventative measures to protect their Private Information. All of this information is vital to victims of a Data Incident, let alone a Data Incident of this magnitude due to the sensitivity and wide array of information compromised in this specific wrongful disclosure.

24. Moreover, in its Notice, Defendant failed to specify whether it undertook any efforts to contact the Class Members whose data was accessed and acquired in the Data Incident to inquire whether any of the Class Members suffered misuse of their data, whether Class Members should report their misuse to Defendant, and whether Defendant set up any mechanism for Class Members to report any misuse of their data.

25. Defendant failed to take precautions designed to keep individuals' Private Information secure.

26. While Defendant sought to minimize the damage caused by the Data Incident, it cannot and has not denied that the sensitive Private Information of Plaintiff and Class Members was wrongfully disclosed to unauthorized parties.

27. Individuals affected by the Data Incident are, and remain, at risk that their Private Information may be misused by the unauthorized recipients.

28. Plaintiff further believes that the Private Information of Class Members may be subject to misuse as a result of the wrongful disclosure in the Data Incident.

**C. Data Incidents Are Preventable.**

29. Data incidents involving wrongful disclosure of private information are preventable. Organizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not improperly disclosed to unauthorized parties.

30. Proper administrative controls and procedures must be implemented and enforced in a rigorous and disciplined manner to prevent wrongful disclosures of Private Information.

31. Defendant could have prevented this Data Incident by, among other things, properly following reasonable privacy policy safeguards and procedures.

32. Given that Defendant was storing the sensitive Private Information of Plaintiff and Class Members, Defendant could and should have implemented reasonable administrative safeguards to prevent inadvertent disclosure of Private Information to unauthorized parties.

33. The occurrence of the Data Incident indicates that Defendant failed to adequately implement and adhere to reasonable administrative measures to prevent wrongful dissemination of the Private Information, resulting in the Data Incident and the exposure of the Private Information of, upon information and belief, hundreds and possibly even thousands of individuals, including that of Plaintiff and Class Members.

**D. Defendant Acquires, Collects, and Stores Individuals' Private Information**

34. In connection with the services Defendant provides, Plaintiff and Class Members were required to give their sensitive and confidential Private Information to Defendant.

35. Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiff's and Class Members' Private Information, Defendant would be unable to carry out its regular business operations.

36. By obtaining, collecting, and storing the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the Private Information from disclosure.

37. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendant to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

38. Defendant could have prevented this Data Incident by properly adhering to reasonable administrative policies and procedures for handling and mailing sensitive information.

**E. The Data Incident Was Foreseeable and the Defendant Was Aware of Its Risk**

39. It is well known that Private Information, including PHI in particular, is valuable and sensitive.

40. Individuals place a high value not only on their Private Information, but also on the privacy of that data. For the individual, identity theft causes significant negative financial impact on victims as well as severe distress and other strong emotions and physical reactions.

41. Despite the importance of protecting sensitive health insurance information, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being wrongfully disclosed.

42. Defendant was, or should have been, fully aware of the unique type and the significant volume of data that it collects and maintains, and, thus, the significant number of individuals who would be harmed by the inadvertent disclosure of such information to unauthorized persons.

43. In the Notice, Defendant makes an offer of a temporary subscription to a credit monitoring service.[9] This is wholly inadequate to compensate Plaintiff and Class Members as it fails to provide for the fact that victims of Data Incidents and other unauthorized disclosures commonly face multiple years of ongoing identity theft, financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiff and Class Members' Private Information. Moreover, once this service expires, Plaintiff and Class Members will be forced to pay out of pocket for necessary identity monitoring services.

44. Defendant's offering of credit and identity monitoring establishes that Plaintiff's and Class Members' sensitive Private Information *was* in fact affected and wrongfully disclosed, and will be subjected to an increased risk of misuse due to Defendant's Data Incident.

45. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate administrative measures, policies, and procedures for protecting Private Information of Plaintiff and Class Members from wrongful disclosure.

46. The ramifications of Defendant's failure to protect the Private Information of Plaintiff and Class Members from wrongful disclosure are long lasting and severe. Once Private Information is disclosed to unauthorized parties, misuse of that information and damage to victims may continue for years.

47. As an entity in possession of Plaintiff's and Class Members' Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members and of the foreseeable consequences if it negligently mishandled the Private Information. This includes the significant costs imposed on Plaintiff and

---

[9] Ex. A.

Class Members because of Defendant's negligence. Defendant failed to take adequate, reasonable measures to prevent the Data Incident.

**F. The Value of Private Information**

48. The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[10] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[11]

49. The PII of individuals remains of high value, and wrongful disclosure of such information creates significant risk of misuse and identity theft.

50. Private Information, once disclosed to unauthorized parties, can be misused in numerous ways, including to commit identity theft, obtain medical services fraudulently, or file false insurance claims.

51. Wrongful disclosure of PHI is also gravely serious: recipients of misdirected mail containing health insurance information could potentially misuse that information to see a doctor under another's name, obtain prescription drugs, file claims with an insurance provider, or receive other care. If incorrect information is added to a victim's medical records, their treatment, insurance and payment records, and credit report may be affected. Plaintiff and Class Members are now at a heightened risk of medical identity theft as a result of the Data Incident and the wrongful disclosure of this PHI to unauthorized parties.

---

[10] 17 C.F.R. § 248.201 (2013).
[11] *Id.*

52. Medical data and health insurance information is particularly valuable and sensitive, making its wrongful disclosure especially harmful to affected individuals.

53. “Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery,” reported Pam Dixon, executive director of World Privacy Forum. “Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief’s activities.”[12]

54. A study by Experian found that the average cost of medical identity theft is “about $20,000” per incident and that most victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive to restore coverage.[13] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third of medical identity theft victims saw their insurance premiums rise, and 40 percent were never able to resolve their identity theft at all.[14]

55. Based on the foregoing, the information wrongfully disclosed in the Data Incident is significantly more harmful than the loss of, for example, credit card information in a retailer data incident because, in those cases, victims can cancel or close credit and debit card accounts. The health insurance information wrongfully disclosed in this Data Incident is impossible to “close” and difficult, if not impossible, to change.

56. Among other forms of fraud, third parties may obtain driver’s licenses, government benefits, medical services, and housing or even give false information to police.

---

[12] Michael Ollove, “The Rise of Medical Identity Theft in Healthcare,” Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/ (last accessed Apr. 13, 2026).

[13] *See* Elinor Mills, “Study: Medical Identity Theft is Costly for Victims,” CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last accessed Apr. 13, 2026).

[14] *Id.; see also Healthcare Data Incident: What to Know About them and What to Do After One,* EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-toknow-about-them-and-what-to-do-after-one/ (last accessed Apr. 13, 2026)

57. The fraudulent activity resulting from the Data Incident may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is disclosed and when it is misused. According to the U.S. Government Accountability Office ("GAO"):

> Fraudulent use of improperly disclosed information may continue for years after the initial disclosure. As a result, studies that attempt to measure the harm resulting from data incidents cannot necessarily rule out all future harm.

58. Plaintiff and Class Members now face ongoing surveillance of their financial and personal records, monitoring, and loss of privacy. The Class is incurring and will continue to incur such damages in addition to any potential misuse of their Private Information.

**G. Defendant Failed to Comply with FTC Guidelines**

59. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Private Information.

60. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should: (i) protect the personal customer information that they keep; (ii) properly dispose of personal information that is no longer needed; and (iii) implement policies to correct security problems.

61. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of an incident.

62. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; use industry-tested methods for security; and verify that third-party service providers have implemented reasonable security

measures.

63. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized disclosure of confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data protection obligations.

64. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized disclosure of individuals' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

**H. Defendant Fails to Comply with HIPAA Guidelines**

65. Defendant is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

66. Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[15] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

67. HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

68. HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic*

---

[15] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

*Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

69. HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

70. "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; [or] (ii) maintained in electronic media." 45 C.F.R. § 160.103.

71. HIPAA's Security Rule requires Defendant to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

72. HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

73. HIPAA and HITECH also obligated Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not

permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

74. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires Defendant to provide notice of the Data Incident to each affected individual "without unreasonable delay and ***in no case later than 60 days following discovery of the breach***."[16]

75. HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

76. HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

77. HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material.[17] The list of resources includes a link to guidelines set by the National Institute of

---

[16] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (emphasis added).(last accessed Apr. 13, 2026)

[17] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html. (last accessed Apr. 13, 2026)

Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.[18]

**I. Defendant Failed to Follow Industry Standards**

78. Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. Companies such as Defendant routinely observe standard data security policies and practices that are aimed towards preventing inadvertent disclosure of Private Information, such as verifying and updating member addresses before sending highly sensitive information, implementing address confirmation procedures, and maintaining accurate mailing databases.

79. Defendant negligently maintained and failed to protect the Private Information entrusted to it by inadvertently sending the Private Information to unauthorized third parties at incorrect addresses and by failing to implement adequate address verification and mail handling procedures.

80. Upon information and belief, Defendant failed to implement industry-standard administrative safeguards for handling sensitive mailings, including failing to verify current member addresses before mailing sensitive documents, failing to implement address change confirmation procedures, and failing to purge or update outdated address information.

81. These administrative safeguards are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant allowed the wrongful disclosure to occur—thereby causing the Data Incident.

**J. The Data Incident Caused Injury to Class Members and Will Result in Additional Harm Such as Fraud.**

---

[18]https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html. (last accessed Apr. 13, 2026)

82. Without detailed disclosure to the victims of the Data Incident, individuals whose Private Information was wrongfully disclosed in the Data Incident, including Plaintiff and Class Members, were unknowingly and unwittingly exposed to the risk of misuse of their Private Information for months without being able to take available precautions.

83. The ramifications of Defendant's failure to secure Plaintiff's and Class Members' data are severe.

84. Victims of data incidents involving wrongful disclosure are at an increased risk of becoming victims of identity theft and other types of fraudulent schemes.

85. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[19] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[20]

86. Unauthorized parties who receive Private Information, such as that of Plaintiff and Class Members, which Defendant failed to keep secure, may use it to perpetrate a variety of crimes that harm victims. For instance, such parties may commit various types of fraud such as: obtaining medical services under another's identity; filing false insurance claims; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

87. As demonstrated herein, the risk of misuse of the wrongfully disclosed Private Information is real and ongoing.

---

[19] 17 C.F.R. § 248.201 (2013).
[20] *Id.*

88. Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[21]

89. The 2017 Identity Theft Resource Center survey[22] evidences the emotional suffering experienced by victims of identity theft:

- 75% of respondents reported feeling severely distressed;
- 67% reported anxiety;
- 66% reported feelings of fear related to personal financial safety;
- 37% reported fearing for the financial safety of family members;
- 24% reported fear for their physical safety;
- 15.2% reported a relationship ended or was severely and negatively impacted by identity theft; and
- 7% reported feeling suicidal.

90. Identity theft can also exact a physical toll on its victims. The same survey reported that respondents experienced physical symptoms stemming from their experience with identity theft:

- 48.3% of respondents reported sleep disturbances;
- 37.1% reported an inability to concentrate / lack of focus;

---

[21] *Victims of Identity Theft*, Bureau of Justice Statistics (Sept. 2015) http://www.bjs.gov/content/pub/pdf/vit14.pdf
[22] *Id*.

- 28.7% reported they were unable to go to work because of physical symptoms;
- 23.1% reported new physical illnesses (aches and pains, heart palpitations, sweating, stomach issues); and
- 12.6% reported a start or relapse into unhealthy or addictive behaviors.[23]

91. Given the nature of the wrongful disclosure in this case, the volume of data involved in this Data Incident, and the sensitive type of Private Information involved, there is a risk that Plaintiff's and Class Members' Private Information may be misused by the unauthorized recipients—e.g., to obtain medical services under another's identity, file false insurance claims, or commit other forms of fraud.

92. Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her Private Information was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

93. Consequently, Plaintiff and Class Members are at an increased risk of potential misuse of their Private Information for many years into the future.

94. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft resulting from Defendant's Data Incident. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear, but for Defendant's failure to safeguard their Private Information.

**K. Plaintiff and Class Members Suffered Damages.**

---

[23] *Id.*

95. As a direct and proximate result of Defendant's wrongful actions and inaction and the resulting Data Incident, Plaintiff and Class Members have been placed at an increased risk of harm from misuse of their Private Information, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate both the actual and potential impact of the Data Incident on their lives. Such mitigatory actions include, *inter alia*, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and monitoring for potential misuse of their information. This time has been lost forever and cannot be recaptured.

96. Defendant's wrongful actions and inaction directly and proximately caused the wrongful disclosure of Plaintiff's and Class Members' Private Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a. wrongful disclosure and potential misuse of their personal and financial information;

b. the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being disclosed to unauthorized parties and potential misuse of Plaintiff's and Class Members' information;

c. the untimely and inadequate notification of the Data Incident;

d. the improper disclosure of their Private Information;

e. loss of privacy;

f. ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Incident;

g. ascertainable losses in the form of deprivation of the value of their Private Information;

h. the loss of productivity and value of their time spent to address, attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Incident, including monitoring accounts, purchasing credit monitoring and identity theft protection services, freezing and unfreezing accounts, and the inconvenience, nuisance and annoyance of dealing with all such issues resulting from the Data Incident; and

i. nominal damages.

97. While Plaintiff's and Class Members' Private Information has been wrongfully disclosed to unauthorized parties, Defendant continues to hold Plaintiff's and Class Members' Private Information. Particularly because Defendant has demonstrated an inability to prevent wrongful disclosures, Plaintiff and Class Members have an undeniable interest in ensuring that their Private Information is secure, remains secure, is properly and promptly destroyed, and is not subject to further wrongful disclosure.

**L. Plaintiff's Experience and Injuries.**

98. Plaintiff is a current or former member of Defendant's health insurance plan and a victim of the Data Incident.

99. Plaintiff provided her Private Information to Defendant in connection with services received from Defendant.

100. Plaintiff trusted that Defendant would use reasonable measures to protect her Private Information in accordance with state and federal law, as well as Defendant's internal and public privacy policies and procedures.

101. Plaintiff received Defendant's Notice, informing her of the Data Incident and exposure of her Private Information, around April 13, 2026.

102. As a result of its inadequate address verification procedures and mail handling policies, Defendant disclosed Plaintiff's Private Information to unauthorized third parties at incorrect addresses.

103. Defendant deprived Plaintiff of the earliest opportunity to guard herself against the Data Incident's effects by failing to promptly notify her about the Data Incident.

104. Plaintiff suffered actual injury from the exposure of her Private Information—which violates her rights to privacy.

105. Plaintiff suffered actual injury in the form of damages to and diminution in the value of her Private Information. After all, Private Information is a form of intangible property—property that Defendant was required to adequately protect.

106. As a result of the Data Incident, Plaintiff has spent time and made reasonable efforts to mitigate its impact, including but not limited to researching the Data Incident, reviewing credit card and financial account statements and monitoring her credit information.

107. Plaintiff will continue to spend considerable time and effort monitoring her accounts to protect herself from identity theft. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed. Plaintiff has and is experiencing feelings of anxiety, stress, fear, and frustration because of the Data Incident. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Incident victim that the law contemplates and addresses.

108. Plaintiff is now subject to the present and continuing risk of fraud, identity theft, and misuse resulting from her Private Information being disclosed to unauthorized third parties.

This injury is worsened by Defendant's failure to promptly inform Plaintiff about the Data Incident.

109. Once an individual's Private Information is disclosed to unauthorized parties, those recipients may use the information to gather additional information. Plaintiff's Private Information was disclosed as a result of the Data Incident.

110. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future wrongful disclosures.

111. Plaintiff also has a continuing interest in lifetime credit monitoring and identity theft monitoring on account of the Data Incident.

**CLASS ALLEGATIONS**

112. Plaintiff brings this class action individually on behalf of herself and all members of the following Class of similarly situated persons pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) of the following class:

> All persons residing in the United States whose Private Information was wrongfully disclosed in the Data Incident ("Class", and the individuals in the Class, the "Class Members"):

113. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, any entities in which Defendant has a controlling interest, as well as the judge(s) presiding over this matter and the clerks, judicial staff, and immediate family members of said judge(s).

114. Plaintiff reserves the right to modify or amend the foregoing Class definitions before the Court determines whether certification is appropriate.

115. Numerosity: The members in the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable. Defendant has not publicly disclosed the number of individuals affected by the Data Incident, but, upon information and belief, thousands have been affected by the Data Incident.

116. Commonality and Predominance: Common questions of law and fact exist as to all Class Members and predominate over any potential questions affecting only individual Class Members. These common questions of law or fact include, *inter alia*:

a. Whether Defendant engaged in the conduct alleged herein;

b. Whether Defendant had a duty to implement and maintain reasonable procedures and practices to protect and secure Plaintiff's and Class Members' Private Information from unauthorized disclosure;

c. Whether Defendant's administrative practices and procedures used to protect Plaintiff's and Class Members' Private Information violated the FTC Act and/or state laws, and/or Defendant's other duties discussed herein;

d. Whether Defendant failed to adequately respond to the Data Incident, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and Class Members;

e. Whether Defendant unlawfully shared, lost, or disclosed Plaintiff's and Class Members' Private Information;

f. Whether Defendant's administrative systems and procedures prior to and during the Data Incident complied with applicable laws and regulations;

g. Whether Defendant's administrative systems and procedures prior to and during the Data Incident were consistent with industry standards;

h. Whether Plaintiff and Class Members suffered injury as a proximate result of Defendant's negligent actions or failures to act;

i. Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and Class Members' Private Information;

j. Whether Defendant breached duties to protect Plaintiff's and Class Members' Private Information;

k. Whether Defendant's actions and inactions alleged herein were negligent;

l. Whether Defendant was unjustly enriched by its conduct as alleged herein;

m. Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

n. Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

117. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of herself and all other Class Members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

118. Typicality: Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had her Private Information wrongfully disclosed in the Data Incident. Plaintiff and Class Members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the

same practices or course of conduct that give rise to the claims of all Class Members.

119. Adequacy: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is an adequate representative of the Class and has no interests adverse to, or in conflict with, the Class she seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

120. Superiority: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress from Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

121. Injunctive and Declaratory Relief: Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

122. Likewise, particular issues are appropriate for certification under Rule 23(c)(4) because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but

are not limited to: (a) whether Defendant owed a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, and safeguarding their Private Information; (b) whether Defendant failed to adequately monitor and audit its administrative systems and mail handling procedures; and (c) whether Defendant failed to take reasonable steps to safeguard the Private Information of Plaintiff and Class Members.

123. All members of the proposed Class are readily ascertainable. Defendant has access to the names in combination with addresses and/or e-mail addresses of Class Members affected by the Data Incident.

## CAUSES OF ACTION
## COUNT I
## NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

124. Plaintiff restates and realleges paragraphs 1 through 123, above as if fully set forth herein.

125. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, misused, and/or disclosed to unauthorized parties. That duty included, among other things, designing, maintaining, and testing Defendant's administrative procedures to ensure that Plaintiff's and Class Members' Private Information in Defendant's possession was adequately safeguarded, that mailings containing Plaintiff's and Class Members' Private Information were sent only to correct, verified addresses, and that Defendant's employees tasked with handling such information were adequately trained on procedures regarding the proper handling and mailing of Plaintiff's and Class Members' Private Information.

126. Plaintiff and Class Members entrusted their Private Information to Defendant with

the understanding that Defendant would safeguard their information, use their Private Information for business purposes only, and not disclose their Private Information to unauthorized third parties.

127. Defendant knew or reasonably should have known that a failure to exercise due care in the collecting, storing, and using Plaintiff's and Class Members' Private Information involved an unreasonable risk of harm to Plaintiff and Class Members.

128. Defendant had a duty to protect Plaintiff's and the Class Members' Private Information as the custodian of their Private Information, which Plaintiff and Class Members were required to submit to Defendant in connection with the services Defendant provides.

129. Defendant had a duty to comply with industry standard data protection and policy measures, the FTC Act, and HIPAA in its collection, storage, and management of Private Information.

130. Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' Private Information.

131. A wrongful disclosure of Private Information to unauthorized recipients, and resulting injury to Plaintiff and Class Members, was reasonably foreseeable, particularly in light of the risks inherent in mailing sensitive information without adequate address verification procedures.

132. Plaintiff and Class Members were the foreseeable and probable victims of any inadequate administrative practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing Plaintiff's and Class Members' Private Information, the critical importance of verifying addresses before mailing sensitive information, and that it had inadequate mail handling protocols in place to protect Plaintiff's and Class Members' Private Information from wrongful disclosure.

133. Defendant's misconduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendant's misconduct included, but was not limited to, failure to take the steps and opportunities to prevent the Data Incident as set forth herein.

134. Plaintiff and Class Members had no ability to protect their Private Information that was in Defendant's possession.

135. Defendant was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Incident.

136. Defendant had a duty to timely disclose that Plaintiff's and Class Members' Private Information within its possession was compromised and precisely the type(s) of information that were compromised. Defendant breached this duty by failing to disclose the Data Incident until over three months after it had been detected.

137. Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' Private Information.

138. Defendant systematically failed to implement adequate administrative safeguards for handling and mailing Private Information.

139. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within its possession.

140. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' Private Information.

141. Defendant, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the Private Information within its possession

might have been compromised and precisely the type of information compromised.

142. Defendant's breach of its duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised.

143. But for all of Defendant's acts of negligence detailed above, including inadvertently mailing Plaintiff's and Class Members' Private Information to incorrect addresses, such information would not have been compromised.

144. Plaintiff's Private Information was disclosed without Plaintiff transmitting any of her own Private Information over the internet or any other unsecured source.

145. Following the Data Incident, Plaintiff's Private Information has been disclosed to unauthorized third parties who may misuse that Private Information, and Plaintiff is unable to prevent its further dissemination.

146. But for the Data Incident, Plaintiff would not have incurred the loss and publication of her Private Information and other injuries.

147. There is a close causal connection between Defendant's failure to implement proper address verification and mail handling measures to protect Plaintiff's and Class Members' Private Information and the harm suffered, or risk of harm suffered, by Plaintiff and Class Members. Plaintiff's and Class Members' Private Information was wrongfully disclosed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate administrative procedures for verifying addresses and handling sensitive mailings.

148. Plaintiff and Class Members now face ongoing monitoring of their financial and personal records and loss of privacy. The Class is incurring and will continue to incur such damages in addition to any potential misuse of their Private Information.

149. As a result of Defendant's negligence and breach of duties, Plaintiff and Class Members face an increased risk of harm in that their Private Information, which is now in the possession of unauthorized third parties, may be misused.

150. Plaintiff seeks the award of actual damages on behalf of herself and the Class.

151. Plaintiff seeks injunctive relief on behalf of the Class in the form of an order (1) compelling Defendant to institute appropriate data collection and safeguarding methods and policies with regard to Private Information; and (2) compelling Defendant to provide detailed and specific disclosure of what types of Private Information have been compromised as a result of the Data Incident.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

152. Plaintiff restates and realleges paragraphs 1 through 123, above as if fully set forth herein.

153. Pursuant to the FTC Act and pursuant to HIPAA, Defendant was required by law to maintain adequate and reasonable measures to maintain the security and privacy of Plaintiff's and Class Members' Private Information.

154. Defendant breached its duties by failing to employ industry standard administrative and data handling measures to ensure its compliance with federal and state laws, the FTC Act, HIPAA, and its internal Privacy Policies by, including, but not limited to, failing to verify member addresses before mailing sensitive information, failing to implement address change confirmation procedures, failing to maintain accurate mailing databases, and failing to properly train staff on mail handling procedures.

155. It was reasonably foreseeable, particularly given the sensitivity of health insurance information, that the failure to reasonably protect and secure Plaintiff's and Class Members' Private Information in compliance with applicable laws would result in unauthorized disclosure of Private Information to incorrect recipients.

156. Defendant's violations of the FTC Act and HIPAA constitute negligence *per se*.

157. Plaintiff and Class Members are within the category of persons the FTC Act and HIPAA are intended to protect.

158. The harm that occurred as a result of the Data Incident is the type of harm the FTC Act and HIPAA are intended to guard against.

159. Plaintiff's and Class Members' Private Information constitutes personal property that was wrongfully disclosed due to Defendant's negligence, resulting in harm, injury and damages to Plaintiff and Class Members.

160. Defendant's conduct in violation of applicable laws directly and proximately caused the unauthorized disclosure of Plaintiff's and Class Members' Private Information, and Plaintiff and Class Members have suffered and will continue to suffer damages as a result of Defendant's conduct. Plaintiff and Class Members seek damages and other relief as a result of Defendant's negligence.

## COUNT III
## BREACH OF IMPLIED CONTRACT
## (On Behalf of Plaintiff and the Class)

161. Plaintiff restates and realleges paragraphs 1 through 123 above as if fully set forth herein.

162. When Plaintiff and Class Members provided their Private Information to Defendant, they entered into implied contracts with Defendant, under which Defendant agreed to

take reasonable steps to protect Plaintiff's and Class Members' Private Information, comply with its statutory and common law duties to protect Plaintiff's and Class Members' Private Information, and to timely notify them in the event of a Data Incident.

163. Defendant solicited and invited Plaintiff and Class Members to provide their Private Information as part of Defendant's provision of services. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

164. When entering into implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's administrative practices complied with its statutory and common law duties to adequately protect Plaintiff's and Class Members' Private Information and to timely notify them in the event of a Data Incident.

165. Defendant's implied promise to safeguard Private Information is evidenced by, *e.g.*, the representations in its Privacy Policies.

166. Plaintiff and Class Members would not have provided their Private Information to Defendant had they known that Defendant would not safeguard their Private Information, as promised, or provide timely notice of a Data Incident.

167. Plaintiff and Class Members fully performed their obligations under their implied contracts with Defendant.

168. Defendant breached its implied contracts with Plaintiff and Class Members by failing to safeguard Plaintiff's and Class Members' Private Information and by failing to provide them with timely and accurate notice of the Data Incident.

169. The losses and damages Plaintiff and Class Members sustained, include, but are not limited to:

a. Wrongful disclosure of their Private Information;

b. Costs associated with purchasing credit monitoring and identity theft protection services;

c. Costs associated with the detection and prevention of identity theft and unauthorized use of their Private Information;

d. Lowered credit scores resulting from credit inquiries following fraudulent activities;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Incident – including monitoring accounts, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and taking other protective measures;

f. The increased risk of potential fraud and misuse posed by their Private Information being disclosed to unauthorized parties;

g. Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against disclosure and not allow access and misuse of their data by others;

h. Continued risk of exposure to unauthorized parties of their Private Information, which remains in Defendant's possession and is subject to further wrongful disclosure so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data; and

i. Emotional distress from the unauthorized disclosure of Private Information to strangers who may now have opportunities to commit identity theft, fraud, and other misuse of Plaintiff's and Class Members' information.

170. As a direct and proximate result of Defendant's breach of contract, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

171. Plaintiff restates and realleges paragraphs 1 through 123 above as if fully set forth herein.

172. Plaintiff and Class Members have an interest, both equitable and legal, in their Private Information that was conferred upon, collected by, and maintained by Defendant and that was wrongfully disclosed in the Data Incident.

173. Defendant benefitted from the conferral upon it of Plaintiff's and Class Members' Private Information, and by its ability to retain and use that information. Defendant understood that it so benefited.

174. Defendant also understood and appreciated that Plaintiff's and Class Members' Private Information was private and confidential and that its value depended upon Defendant maintaining its privacy and confidentiality.

175. But for Defendant's willingness and commitment to maintain its privacy and confidentiality, that Private Information would not have been transferred to and entrusted with Defendant. Further, if Defendant had disclosed that its administrative safeguards were inadequate,

Defendant would not have been permitted to continue in operation by regulators and the financial marketplace.

176. As a result of Defendant's wrongful conduct as alleged in this Complaint (including, among other things, its failure to employ adequate administrative and mail handling measures, its continued maintenance and use of Plaintiff's and Class Members' Private Information without having adequate safeguards against wrongful disclosure, and its other conduct facilitating the wrongful disclosure of that Private Information), Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

177. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compilation and use of Plaintiff's and Class Members' sensitive Private Information, while at the same time failing to maintain proper administrative procedures to prevent the wrongful disclosure of that information to unauthorized parties.

178. Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the use of Plaintiff's and Class Members' Private Information in an unfair and unconscionable manner. Defendant's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

179. The benefit conferred upon, received, and enjoyed by Defendant was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain the benefit.

## COUNT V
## INJUNCTIVE/DECLARATORY RELIEF
## (On Behalf of Plaintiff and the Class)

180. Plaintiff restates and realleges paragraphs 1 through 123 above as if fully set forth herein.

181. Defendant owes a duty of care to Plaintiff and Class Members requiring it to adequately secure Private Information.

182. Defendant still stores Plaintiff's and Class Members' Private Information.

183. Since the Data Incident, Defendant has announced no specific changes to its administrative procedures and mail handling processes which permitted the Data Incident to occur and, thereby, prevent similar incidents from occurring in the future.

184. Defendant has not satisfied its legal duties to Plaintiff and Class Members.

185. Actual harm has arisen in the wake of the Data Incident regarding Defendant's duties of care to provide adequate safeguards to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their Private Information, and Defendant's failure to address the administrative failings that led to that exposure.

186. Plaintiff, therefore, seeks a declaration: (a) that Defendant's existing administrative measures do not comply with its duties of care to adequately protect Private Information; and (b) that to comply with its duties of care, Defendant must implement and maintain reasonable safeguards, including, but not limited to, the following:

a. ordering that Defendant engage third-party auditors as well as internal personnel to conduct testing and audits on Defendant's mail handling and address verification systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such auditors;

b. ordering that Defendant engage third-party auditors and internal personnel to implement automated address verification and change monitoring systems;

c. ordering that Defendant audit, test, and train its personnel regarding any new or modified mail handling and address verification procedures;

d. ordering that Defendant implement procedures to verify and confirm member addresses before mailing sensitive documents, including requiring address confirmation for members who have not updated their information within a specified period;

e. ordering that Defendant purge, delete, and destroy in a reasonably secure manner Private Information not necessary for its provision of services;

f. ordering that Defendant conduct regular audits of its mailing databases and address records; and

g. ordering that Defendant routinely and continually conduct internal training and education to inform personnel how to properly handle sensitive mailings and what procedures to follow to prevent inadvertent disclosures.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the class, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

A. Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, nominal damages and disgorgement;

C. Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of herself and the Class, seeks appropriate injunctive relief designed to prevent Defendant from experiencing another Data Incident by adopting and

implementing best administrative practices to safeguard Private Information and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

D. Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all claims herein so triable.

Dated: April 13, 2026

Respectfully submitted,

*/s/ Leanna A. Loginov*

Leanna A. Loginov (NY 5894753)
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
E: lloginov@shamisgentile.com

Mark Svensson (NY 5974290)
**MILBERG, PLLC**
405 East 50th Street
New York, New York 10022
Tel: (202) 975-0468
msvensson@milberg.com

*Counsel for Plaintiff and the Proposed Class*